# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **B.F., M.J., and Z.J.**

**No. 18-0054** (Gilmer County 17-JA-10, 11, and 12)

**FILED**

**May 14, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.J., by counsel Jared S. Frame, appeals the Circuit Court of Gilmer County's December 27, 2017, order terminating her parental and custodial rights to B.F., M.J., and Z.J.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), David Karickhoff, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2017, the DHHR filed a petition alleging that petitioner was homeless and, as a result, was subjecting her children to unsafe and unsanitary living conditions. The petition alleged that when DHHR workers came to remove the children from petitioner's custody that the two older children were found sleeping on the bare floor of a pantry in the home they were currently staying. The pantry was full of chemicals, pesticides and other cleaning supplies, some of which were in reach of the children and without the lids attached. DHHR workers also found a coffee can that contained a mixture of Cheerios and animal food in the room. The youngest child was found strapped into a car seat in the front room of the house. According to the petition, petitioner was feeding the youngest child watered-down two-percent milk, but the milk was observed to be spoiled and curdled in the baby's bottle. Finally, it was alleged that petitioner had a previous abuse and neglect petition filed against her in regard to an older child

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

not at issue in this matter which alleged domestic violence in the presence of the child, difficulty coping with the child's crying, and destructive ideations. Ultimately, petitioner relinquished her parental rights to that child in 2013.

Petitioner waived her preliminary hearing. According to the parties, petitioner was charged with felony child endangerment and jailed as a result of the conditions found when the children were removed from her care. Petitioner remained incarcerated throughout the proceedings.

The circuit court held an adjudicatory hearing in September of 2017 and the DHHR presented evidence to support the allegations in the petition. After the presentation of evidence, the circuit court found that petitioner was an abusing parent and that the children were abused and neglected children.

In December of 2017, the circuit court took evidence related to petitioner's motion for a post-adjudicatory improvement period and the DHHR's motion for termination of parental rights. A psychologist opined that petitioner's prognosis for improved parenting was "virtually non-existent." In support of her opinion, the psychologist noted that petitioner previously received DHHR intervention, such as parenting and adult life skills classes, on four separate occasions and still continued to make poor choices for her children. Additionally, the psychologist testified that petitioner did not take responsibility for these poor choices, but rather attempted to blame others, stating that she "trusted the wrong people." A DHHR worker testified that the DHHR was seeking termination due to the multiple unsuccessful past interventions and that further interventions would likely be unsuccessful. Petitioner testified that she was participating in parenting classes while incarcerated and that she would participate in any services required if granted an improvement period. Ultimately, the circuit court found that petitioner received services on four separate occasions and that her failure to improve was due to a lack of motivation. The circuit court further found that there was no reasonable likelihood that petitioner would benefit from further services. Finally, the circuit court concluded that it was in the best interest of the children to terminate petitioner's parental and custodial rights and did so in its December 27, 2017, order.[2] Petitioner now appeals that order.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

---

[2]The father of D.F. is deceased, and the permanency plan for D.F. is adoption in the current foster home. The father of M.J. was granted a pre-adjudicatory improvement period. According to the parties, the father of Z.J. is currently incarcerated and the circuit court is awaiting a competency evaluation before proceeding. Further, the children's permanency plan is either continuation in the custody of their respective fathers or adoption in their instant foster home. All three siblings are currently living in a foster home together.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

Petitioner's only assignment of error is that the circuit court erred in terminating her parental and custodial rights without granting her an improvement period. Petitioner asserts that she was capable of participating in an improvement period and that the circuit court placed undue emphasis on her incarceration in determining that she could not participate. Respondents argue that the circuit court correctly found that there was no reasonable likelihood that further services would remedy the conditions of abuse and neglect because she failed to remedy the circumstances surrounding her chronic history of abuse and neglect even after the DHHR provided her with extensive services. We agree with respondents.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'" *In re Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004). Further, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.,* 212 W.Va. 443, 448, 573 S.E.2d 354, 359 (2002).

The circuit court did not err in denying petitioner's motion for a post-adjudicatory improvement period because it was unlikely that petitioner would have made any improvement. It is clear and uncontradicted in the record that petitioner was the beneficiary of services provided by the DHHR on multiple occasions. Petitioner subjected her children to dangerous and unsanitary conditions, despite the previous education for the proper care of young children. At the dispositional hearing, petitioner admitted that she made a poor choice in allowing her children to stay in the home where they were found. Yet, despite the instruction petitioner was previously provided, she still made that choice for her children. Petitioner's parenting was simply not improving after continual exposure to the parenting and adult life skills curriculum. Thus, the circuit court was correct in concluding that petitioner's parenting would not improve after a fifth series of services.

Petitioner argues that the circuit court placed undue consideration on her incarceration; however, according to the record, the circuit court was much more concerned with petitioner's failure to provide a safe home for her children despite continual DHHR interventions.[3] Accordingly, we find that petitioner is not entitled to relief on this issue. The circuit court has discretion in its decision to grant an improvement period, and we find no abuse of discretion in this case.

The same evidence supports the circuit court's termination of petitioner's parental and custodial rights. West Virginia Code § 49-4-604(b)(6) provides that, upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the [children]," the circuit may terminate the parental rights of an abusing parent. Additionally, West Virginia Code § 49-4-604(c) provides that no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected exist when "the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Petitioner demonstrated that even with four courses of instruction on how to properly parent her children she continued to make poor decisions and put her children at risk. Petitioner was given ample opportunity to correct her parenting with no positive outcome. Further, petitioner subjected the children to living conditions that threatened their health and safety. We have previously held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. The circuit court properly considered the young ages of the children and the extent that petitioner's actions threatened their health and welfare. Accordingly, we find no error in the circuit court's termination of petitioner's parental and custodial rights.

Lastly, because the proceedings in circuit court regarding the fathers are still ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as

---

[3]Petitioner further argues that the circuit court relied solely on her incarceration to terminate her parental and custodial rights. We do not find that this is the case, given the circuit court's reliance on other factors in ordering termination.

to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for children within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 27, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: May 14, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker